UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WILLIAM JASON SYWAK, ) <br> ) <br> Defendant. ) | Docket No.: 0090 1:21-cr-00494-002 |

**SENTENCING MEMORANDUM AND CHARACTER LETTERS
ON BEHALF OF WILLIAM JASON SYWAK**

Defendant William Jason Sywak submits this Memorandum to assist the Court in imposing a reasonable sentence that is sufficient, but not greater than necessary, to meet the sentencing goals of 18 U.S.C. § 3553(a) for his conviction of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).

Based on the factors set forth in Section 3553(a), Mr. Sywak's limited actions, his exemplary post-arrest conduct, full acceptance of responsibility, and his essential responsibilities as the sole financial provider for his wife and 10-month infant son, counsel for Mr. Sywak requests a sentence to a term of probation, with conditions including community service, and $500 restitution, as a sentence that would best serve the interests of justice without being excessive.

In addition, for the Courts consideration, are the attached letters in support of Mr. Sywak:

**Exhibit A**: Letter from Nikki Mundaniohl (Fiancé)

**Exhibit B:**     Letter from Amy Fox (Mother)

**Exhibit C:**     Letter from Rhiley Sibiga (Step-sister)

**Exhibit D:**     Letter from Barbara A. Grande (Grandmother)

**Exhibit E:**     Letter from Dale Fleming (Manager)

**Exhibit F:**     Letter from Jake Aplin (Co-worker)

## PRELIMINARY STATEMENT

On February 2, 2022 defendant William Jason Sywak appeared before this Court and pled guilty, pursuant to a written plea agreement, to the Fourth Count of an Information previously filed against him.   Under the written plea agreement, it was the understanding of Mr. Sywak and the government that the United States Sentencing Guidelines do not apply to a Class B Misdemeanor and, as a consequence, sentencing will be determined relative to the factors set forth in 18 U.S.C. § 3553(a).

The parties agreed that the maximum sentence is a term of imprisonment is 6 months, a term of probation not to exceed 5 years and a fine of not more than $5,000.00.  The parties also acknowledged the potential of a period of supervised release of not more than 1 year and an obligation to pay applicable interest on penalties, fines and restitution if they are not paid in a timely fashion.  Mr. Sywak also agreed to pay a special assessment of $10.00 as well as restitution to the Architect of the Capitol in the amount of $500.00.  Moreover, Mr. Sywak agreed to permit law enforcement officers to review any social media accounts relating to his possession and postings which took place in or about January 6, 2021.

## HISTORY AND CHARACTERISTICS OF WILLIAM JASON SYWAK

William Jason Sywak is a 28-year-old man.  He is a lifelong resident of Buffalo, New York.  Presently, he lives with his fiancé, Nikki, and their 11-month old son, who was born shortly after his arrest in this matter.  William and Nikki have been in a long-term relationship having met as teenagers.  They are engaged and plan to marry in a couple of years after they save up enough money for the wedding.  Since the birth of their son, Nikki has been a stay-at-home mother, and William is the sole financial support for the family.  (Exhibit A, PSR ¶ 61).  William's family mean everything to him and his full focus has been on providing for them and maintaining the family home.

William was raised by his mother, Amy Fox.  He describes his mother, who reared him as a single parent, as "someone who was always present, very supportive, who would make ends meet to provide him with anything he needed."  See PSR ¶ 55.  She writes to the Court in support of her son:

> When it comes to my son, I have nothing but good words to say.  Since childhood he has been a polite and respectful young boy.   He has never talked back or argued with me.  He did his chores when asked and helped out with his younger siblings.  He has always been a hard worker.  When it came to his schoolwork and his jobs he put in his best effort.  School was a struggle but he was determined to always do his best.  He always wanted to make a good impression.  He has been working since he was 15 years old and has paid for most things he owns.  Even as an adult he impresses me with his work ethic and respect towards others.

(Exhibit B).  In addition to his mother, both his step-sister and grandmother remain supportive, and all consistently speak of Williams hard work ethic, his generosity and his devotion to his young family.  (Exhibit B through Exhibit D).  Nikki too speaks of William's generosity, describing at time when he agreed to take in Nikki's niece and

sister when they were having a difficult time. He welcomed them into the apartment until they could land on their feet. (Exhibit A).

When growing up, William's father, William Michael Sywak, was not present much in his life. He saw his father on the occasions he visited his paternal grandmother, Barbara Grande. If not for his grandmother, Mr. Sywak senior would never have had any contact with his son. (PSR, n. 4). As his mother writes, "William never had a steady relationship with his father. He always longed to spend time with his dad and took any opportunity to have time with him. As an adult, once William and his fiancé were expecting a child of their own, he and his father tried to make more of an effort on their relationship. William viewed the trip to the Capitol as a chance for he and his father to work on their relationship. His mother confirms: "When his father asked him to go on the trip to Washington, D.C., William of course said yes. He took this as an opportunity to start fresh and bond with his father." He and his father still have limited contact. He describes his dad as a better grandfather than he was a father. (PSR ¶ 54).

Since graduating from high school, William has been employed in welding and fabrication. In 2017 he started work with General Welding and Fabricating and has been supervised by Dan Flemming since that time. (PSR ¶ 76). Mr. Flemming describes William as a "hard-working employee that is always on time and gives 100% to his job every day. He always helps with extra projects, mobile welding jobs and is always willing to work overtime when needed. William has worked hard the past 5 years to purchase his first house and start a family." (Exhibit E). Mr. Flemming also speaks of the expression of remorse he heard from William since his involvement in the offense conduct. "I have noticed William not being his true self after the incident and I know that

4

he is truly sorry for what happened." (Exhibit E). His co-worker, Jake Aplin echoes those sentiments:

> I've known William for 6 years, we met through work and became friends instantly. The reason he and I easily became friends is because of his kindness, generosity and his need to help others, always with any task between work and home….William has shown a lot of remorse since his actions and is aware of the situation."

(Exhibit F).

Following his arrest on this case, William was released on conditions. He has remained fully compliant with pretrial services and all conditions of his release in the more that 12 months that his case has been pending. In addition, following his arrest, William abandoned all of his social media accounts. He expressed his desire to avoid exposure to the false news reports that permeate on-line platforms. He recognizes and feels ashamed that he fell for those reports before.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE AND ACCEPTANCE OF RESPONSIBILLITY

Mr. Sywak does not dispute that the offense is serious. The presentence report more specifically details Mr. Sywak's offense conduct on January 6, 2021 at the United States Capitol grounds. See PSR ¶¶ 14-38. More specifically, Mr. Sywak admitted to traveling with his father from Western New York to Washington, D.C. to attend the "Stop the Steal" rally on January 6, 2021. William Jason Sywak had believed President Trump's rhetoric that the election was stolen. By the time the two arrived in Washington, the President had completed his speech and most of the crowd had dispersed, moving toward the Capitol. The two walked over to the Capitol grounds and up the steps as the crowd was moving toward the entrance to the Capitol.

They entered the Capitol building approximately five minutes after initial rioters entered the Capitol. The two were then separated after entering. William Jason Sywak remained in the Capitol building for approximately 20 minutes, took photos and videos, and shared those with associates. After Mr. Sywak left the building, he remained outside walking around witnessing other rioters, videotaping and photographing other's attempts to breach additional entrances to the Capitol and the confrontations with police. William continued to look for his father without success until approximately 8:00 or 9:00 pm that evening – his father's cell phone battery had died and needed recharging before he could contact him. The two then left Washington, D.C. shortly thereafter. William texted his fiancé and friends about the events that day and the next, including what he had witnessed, still believing the rhetoric which caused him to go on January 6th.

In no way does Mr. Sywak dispute that the offense conduct is serious and that many of the rioters engaged in violence causing injury to law enforcement officers and destruction of property. But Mr. Sywak did not engage in violence, he did not assault officers or destroy property. At no point did he encourage others to do so. William entered the Capital Building through a door way at which law enforcement had been overwhelmed some five minutes prior. He remained inside the Capitol building for approximately 20 minutes. He did not attend having belonged to any groups or organizations and was not part of any organized group of rioters. When initially interviewed by FBI Agents in Buffalo on May 19, 2021 he admitted to being at the Capital and going inside and he gave over the password for his cell phone.

Since his arrest on these charges he has continually expressed his remorse for his involvement in the events of January 6th, to counsel, to his family, to his co-workers and to Probation. When interviewed by the United States Probation Office, Mr. Sywak again admitted

his conduct saying he regrets having any interest in the President's speech, and wishes he would have never believed any of the President's rhetoric. See PSR ¶41. Since the events of January 6th and his subsequent arrest, he has remained focused on providing for his fiancé and their newborn child. He even went so far as to disable his social media accounts because he was ashamed how he believed the false reports that the election had been stolen.

As the United States Probation Office describes, "Mr. Sywak's culpability appears to be minimal in contrast with rioters who destroyed or stole government property and assaulted or threatened the law enforcement officers on that date." Doc. #45.

### REQUEST FOR A SENTENCE OF NON-INCARCERATION

As recommended by the United States Probation Office, it is requested that his Court impose a non-incarceration sentence to a term of probation. Mr. Sywak's does not dispute his involvement in the offense conduct, nor his attempts to video tape/photograph the events of that day, nor his text messages with friends describing what he witnessed. Once he was home and aware of the full impact of what occurred, he was and remains embarrassed at having been persuaded by the President's rhetoric that the election was stolen. He himself did not participate in any violent conduct nor did he engage in any destruction of property. Mr. Sywak's lack of criminal history, lack of a violent past, and his compliance on pretrial release demonstrate that he is unlikely to reoffend. His disabling of his social media accounts, and more importantly his recognition of how he succumbed to the false reports about the election, demonstrate that he will not be swept up in such irrational thoughts again. He poses no risk to the public. Most importantly, he is the sole provider for his fiancé and their young son. For all of these reasons, a

sentence of probation is sufficient and not greater than necessary to account for the goals of sentencing.

For all of the foregoing reasons, we ask that the Court sentence Mr. Sywak accordingly.

**DATED**:          Buffalo, New York, May 27, 2022

Respectfully submitted,

**/s/  MaryBeth Covert**
MaryBeth Covert
Senior Litigator
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
marybeth_covert@fd.org